IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**HOLLY S.**[1]

        Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,**

        Defendant.

Civ. No. 6:24-cv-01506-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Holly S. ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration denying her claim for Supplemental

Security Income. Full consent to magistrate jurisdiction was entered on September 9, 2024 (Dkt.

#4). For the reasons provided below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Born in 1987, Plaintiff alleges disability due to the effects of depression, anxiety,

schizoaffective disorder, panic disorder, neurocognitive disorder, borderline personality disorder,

bipolar I disorder, and post-traumatic stress disorder ("PTSD"). Tr. 217-24, 895-902, 941-52. On

January 31, 2017, Plaintiff protectively filed an application for Supplemental Security Income

("SSI"), alleging disability beginning June 29, 1987 (her date of birth). Tr. 192-98. The agency

denied the claim both initially and upon reconsideration, and Plaintiff requested a hearing. Tr.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name
of the non-governmental party or parties in this case.

111-20, 126-28. She appeared for a hearing before an ALJ in October 2018. Tr. 54-79. At the hearing, Plaintiff amended her alleged onset date to January 31, 2017, the application date. Tr. 58.

In February 2019, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 33-53. Although the ALJ did not list a substance use disorder as one of Plaintiff's severe impairments or discuss whether it was a medically determinable impairment, Tr. 38, she later referred to Plaintiff's "impairments, including substance use disorder," and performed a substance use analysis as if she *had* found that Plaintiff's substance use disorder was a medically determinable impairment. Tr. 39, 42-49. The ALJ then indicated that if Plaintiff stopped using marijuana, she would retain the capacity to perform jobs existing in significant numbers in the national economy. Tr. 39, 48. The ALJ concluded that Plaintiff was not disabled under the Act. Tr. 49.

Plaintiff requested review of the hearing decision, which the Appeals Council ("AC") denied in December 2019. Tr. 189-91, 1-7. Plaintiff then sought judicial review by this Court. *See* Tr. 637-40. The Commissioner conceded that the ALJ erred in analyzing whether Plaintiff's marijuana use was a contributing factor material to the disability determination, but the parties disagreed as to the appropriate remedy. *Holly L. v. Kijakazi*, 6:20-cv-00225-CL, 2022 WL 832256, at *3 (D. Or. Mar. 21, 2022) (available at Tr. 630). This Court reversed and remanded the matter for further administrative proceedings, holding that "the ALJ failed to make a factual finding whether Plaintiff has a substance use disorder, so further proceedings are necessary to develop the record." *Id.* at *3 (available at Tr. 630-31).

The AC then remanded the case to the ALJ for further proceedings consistent with this Court's order. Tr. 623. The AC noted that Plaintiff had filed a subsequent application for SSI and

advised the ALJ to consolidate the claims files and issue a new decision on the consolidated claims. Tr. 623. The AC further advised the ALJ to "apply the prior rules [regarding the evaluation of medical evidence] to the consolidated case pursuant to HALLEX I5-3-30." Tr. 623; *see* I-5-3-30. Revisions To Rules Regarding the Evaluation of Medical Evidence, HALLEX I-5-3-30, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/2501530030 (last visited September 30, 2025) ("If the subsequent application(s) is filed on or after March 27, 2017 and the pending application(s) is filed before March 27, 2017, adjudicators will apply the prior rules to the consolidated case.").

In March 2024, the ALJ held another administrative hearing. Tr. 544-63. Following the hearing, Plaintiff moved to amend her disability application, seeking a closed period of benefits from her alleged onset date of January 31, 2017, to April 14, 2023, to "account for her medical improvement and training period that occurred prior to her current job" that began on July 17, 2023. Tr. 861. On May 13, 2024, the ALJ issued another unfavorable decision denying Plaintiff's application for disability benefits. Tr. 489-516.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity"? 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay or
    profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such
    work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
    expected to result in death, an impairment is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or
    must be expected to last for a continuous period of at least 12 months. 20
    C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
    impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
    416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
    proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then
    the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis proceeds to the "residual functional
    capacity" ("RFC") assessment.

    a.  The ALJ must evaluate medical and other relevant evidence to assess
        and determine the claimant's RFC. This is an assessment of work-
        related activities that the claimant may still perform on a regular and
        continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e);
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the
        analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.
    §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his
    or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience,
    is the claimant able to make an adjustment to other work that exists in
    significant numbers in the national economy? If so, then the claimant is not

> disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity from January 31, 2017, the application date, through April 14, 2023, the end of the requested closed period. Tr. 494.

2. Plaintiff has the following severe impairments: major depressive disorder, anxiety, schizoaffective disorder with depressive traits, panic disorder, neurocognitive disorder, borderline intellectual functioning, borderline personality disorder, bipolar I disorder, and posttraumatic stress disorder. Tr. 495.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 496.

4. Plaintiff has the residual functional capacity to perform a full range of work but with the following nonexertional limitations: She can understand, remember, and/or carry

out simple and routine instructions; use judgment to make simple, work-related decisions; frequently interact with supervisors and coworkers; and occasionally interact with the public. Tr. 497.

5.  Plaintiff was capable of performing past relevant work as a housekeeping cleaner, but also could perform the requirements of representative occupations such as hand packager, night cleaner, and blender. Tr. 505-06.

6.  Plaintiff was not under a disability, as defined in the Social Security Act during the closed adjudicatory period from January 31, 2017 through April 14, 2023. Tr. 507.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*,

53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ erred by improperly rejecting the opinions of Tonia Porchia, PsyD, and Katherine Warner, PhD, and
2. Whether the ALJ properly considered Plaintiff's allegations of mental dysfunction.

For the following reasons, the Court concludes that the ALJ properly considered the medical opinions on record from Dr. Porchia, Dr. Warner, and Plaintiff's allegations. The decision of the Commissioner is AFFIRMED.

## I.  Medical Opinion Evidence

Because this case was initiated prior to March 27, 2017, the old medical rules apply for the ALJ's evaluation of medical opinion evidence.[2] Under the old rules, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

---

[2] This opinion contains case law applying the old medical rules, some of which have been superseded by statute, but are applicable to the case at hand.

1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a

nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and

those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179,

184 (9th Cir. 1995), as amended (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at

1042-43. "[T]he opinion of a non-examining medical advisor cannot by itself constitute

substantial evidence that justifies the rejection of the opinion of an examining or treating

physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations

omitted); *but see id.* at 600 (opinions of non-treating or non-examining physicians may serve as

substantial evidence when the opinions are consistent with independent clinical findings or other

evidence in the record).

### A. Tonia Porchia, PsyD

Tonia Porchia, PsyD, was the medical expert called to testify at Plaintiff's administrative

hearing on March 5, 2024. Tr. 552-56. Dr. Porchia testified that Plaintiff suffered from bipolar

disorder, chronic PTSD, and memory impairment or neurocognitive disorder secondary to

traumatic brain injury ("TBI"). Tr. 552-53. As to the issue of Plaintiff's substance use disorder,

Dr. Porchia testified,

> However, throughout the time period even with the cannabis use, which in my
> opinion, Judge, was not at all material, it's the problem is that there is a
> combination -- excuse me, a combination of the problems of the traumatic brain
> injury which would be 12.02, the bipolar disorder which has been severe to

include psychosis 12.04, and the claimant's trauma history 12.15. So, altogether
the claimant certainly would at least equal all of these listings together from 1/31
of 2017 all the way to April of 2023.

Tr. 554.

The ALJ gave Dr. Porchia's testimony of Plaintiff's limitations "no weight". Tr. 40. The

ALJ indicated that Dr. Porchia did not explain "how she evaluated the requirements of listings

12.02, 12.04, and 12.15 to reach her conclusion that these listings were equaled." Tr. 503.

Further, the ALJ stated that Dr. Porchia was "unable to articulate the evidence she relied on to

determine that the claimant equaled a listing until experiencing medical improvement by which

the claimant is now able to perform a job with a specific vocational preparation of five that

corresponds to skilled work." *Id.*

State agency reviewing psychologists and medical experts who testify at disability

hearings are treated as non-examining experts in disability proceedings. The ALJ may not ignore

these opinions and must explain the weight given. Social Security Ruling ("SSR") 96-6p, 1996

WL 374180 (July 2, 1996). The analysis and opinion of an expert selected by the ALJ may be

helpful in his adjudication, and the court should not second guess the ALJ's resolution of

conflicting medical testimony. *Andrews*, 53 F.3d at 1041 (citing *Magallanes v. Bowen*, 881 F.2d

747, 753 (9th Cir. 1989)). Here, there is no heightened standard to which the ALJ must have

evaluated Dr. Porchia's opinion because she did not treat or examine Plaintiff. Dr. Porchia is

considered a non-examining physician. The conclusion of a non-examining expert is generally

entitled to less weight than the conclusion of an examining physician; However, giving the

examining physician's opinion more weight than the non-examining expert's opinion does not

mean that the opinions of non-examining sources and medical advisors are entitled to no weight.

*Andrews*, 53 F.3d at 1037. A non-examining doctor's opinion may be discounted by reference to

specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Such is the case here.

The ALJ's assertion that Dr. Porchia did not "explain her opinion in terms of the [Plaintiff]'s level of functioning from January 2017 through April 2023[,]" is supported by the record. Dr. Porchia only referenced objective medical evidence from outside the closed adjudicatory period to support her opinion. *See* Tr. 553, citing Tr. 280-81 (Dr. Warner's 2016 Neuropsychological Evaluation). Evidence outside the "actual period at issue" is of limited relevance. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). What Dr. Porchia does refer to *within* the closed adjudicatory period are indeed "recitation[s] of the [Plaintiff]'s subjective complaints and her diagnoses in the record." Tr. 503; *see* Tr. 554 ("again the [Plaintiff] is continuing to acknowledge panic symptoms, anxiety, feeling so anxious that at times she would vomit"), citing Tr. 299. Dr. Porchia then refers to Plaintiff's 2018 subjective reports of "mood swings[,]" "anxiety[,]" and being "constantly on edge[.]" Tr. 554, citing Tr. 468. Without more, Dr. Porchia's assessment of Plaintiff's mental limitations is not supported by anything other than her own subjective reports.

Generally, an ALJ may reject medical opinions "premised to a large extent upon the claimant's own accounts of his symptoms and limitations . . . where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted). Plaintiff takes issue with the ALJ's explanation and asserts that the "rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.* As previously discussed, however, the ALJ also rejected Dr. Porchia's opinion due to her inability to clearly articulate the specific evidence she relied upon to

demonstrate that a listing was equaled during the closed adjudicatory period.[3] Furthermore, the

ALJ discounted her opinion because the record indicated both medical improvement and relevant

vocational history during the closed period—factors that each speak to Plaintiff's functionality.

However, Dr. Porchia failed to discuss either in light of Plaintiff's symptoms at the hearing

despite having access to the full medical record. For all these reasons, the ALJ was reasonable in

giving Dr. Porchia's opinion "no weight." Tr. 40.

### B. Katherine Warner, PhD

Katherine Warner, PhD, provided a neuropsychological evaluation of Plaintiff on

October 14, 2016. Tr. 276-95. Dr. Warner's opinion was based on a review of the records

available at that time, a clinical interview, and psychometric tests, including the Wechsler

Intelligence Scale for Adults – Fourth Edition ("WAIS-IV"), Wide Range Achievement Test 4

("WRAT-4"), and Repeatable Battery for Assessment of Neuropsychological Status – Update

("RBANS"). Tr. 276-77. Dr. Warner diagnosed Plaintiff with schizoaffective disorder

(depressive type), panic disorder, and neurocognitive disorder due to a TBI. Tr. 281. Dr. Warner

assessed a moderate limitation in Plaintiff's ability to understand, remember, and carry out very

short and simple instructions; maintain attention and concentration for extended periods; make

simple work-related decisions; complete a normal workday and workweek without interruptions

from psychologically-based symptoms and perform at a consistent pace without an unreasonable

number and length of rest periods; ask simple questions or request assistance; maintain socially

appropriate behavior and adhere to basic standards of neatness and cleanliness; respond

---

[3] To "equal" a listed impairment, Plaintiff must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment or an impairment most like Plaintiff's. *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. Tr. 285-86. Dr. Warner also assessed marked limitations in Plaintiff's activities of daily living ("ADLs") and social functioning. Tr. 287. Dr. Warner assessed a moderate limitation in concentration, persistence, and pace. Tr. 287. Lastly, Dr. Warner noted that Plaintiff's ratings were not impacted by any drug or alcohol use. Tr. 288.

After complying with the remand order and finding Plaintiff's drug use immaterial, the ALJ reevaluated Dr. Warner's opinion and gave it "some weight to the extent that a limitation to performing simple and routine instructions with simple, work-related decisions is reasonable and supported by the objective evidence of record." Tr. 504. The ALJ then indicated that there is "no evidence to support Dr. Warner's designation of marked limitations in any functional area as her opinion was rendered in 2016 subsequent to a one-time exam in the absence of any evidence of daily functioning or vocational history" and that "her opinion was rendered long before the claimant began to receive ongoing and consistent treatment for her mental impairments." *Id.*

Plaintiff mainly takes issue with the ALJ's second decision, noting that she only afforded "some weight" to Dr. Warner's opinion as opposed to her first decision, where she gave Dr. Warner's opinion "great weight." Pl. Br. at 16-18. Although the Commissioner's prior findings are binding on any later decision, no preclusive effect should be given to a decision that is vacated by a remand to the agency. *See* 42 U.S.C. § 405(h). A remand order essentially wipes out the prior agency decision. *Anaheim Mem'l Hosp. v. Shalala*, 130 F.3d 845, 851 (9th Cir. 1997). Though the ALJ's first and second decisions differ, the ALJ reasonably evaluated the medical opinion of Dr. Warner. The existence of an inconsistency between two decisions following a remand, by itself, does not demonstrate a lack of substantial evidence so long as a rational

interpretation of the evidence supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Considering Dr. Warner's examination was done *prior* to the closed adjudicatory period, she did not have access to the medical records from the period at issue. Thus, the ALJ's assertion that "there is no evidence to support" Dr. Warner's marked limitations in her opinion which was "rendered in 2016 subsequent to a one-time exam in the absence of any evidence of daily functioning or vocational history and her opinion was rendered long before the claimant began to receive ongoing and consistent treatment for her mental impairments" was a rational interpretation of the evidence. While typically an examining physician's opinion should not be discounted based on a one-time examination, the ALJ here was specifically referring to Dr. Warner's functional assessment in the areas of ADLs and social interaction, which contrasts with Plaintiff's later improvement in those areas. *See Lidia M. v. Berryhill*, No. 2:18-CV-03179-GJS, 2019 WL 1777289, at *4 (C.D. Cal. Apr. 23, 2019) (noting distinction); *but see Chavez v. Saul*, No. 2:18-CV-1079-EFB, 2019 WL 4747698, at *4 (E.D. Cal. Sept. 30, 2019) ("[A] medical opinion may not be rejected solely because the physician had only evaluated the claimant on one occasion. To hold otherwise would render every opinion from examining physicians meaningless.").

This distinction is particularly important because the only "marked" limitation Dr. Warner assessed for Plaintiff regarded her ADLs and social interactions, but treatment notes from 2018 onward demonstrate Plaintiff's significant improvement in these areas. Indeed, citations from the record throughout the closed period demonstrate Plaintiff's improvement with treatment, stability with medication, increased activities of daily living ("ADLs"), vocational history, and reduced treatment, all of which were not available to Dr. Warner at the time of her

examination. *See* Tr. 477, 557-58, 1607, 1913, 2027, 2029. Furthermore, the ALJ did not deny

Dr. Warner's opinion outright, as she granted her opinion some weight and assessed a residual

functional capacity that accounted for Plaintiff's continued limitations concerning simple and

routine instructions, simple work-related decisions, and occasional interaction with the public.

*See* Tr. 497. For all these reasons, the ALJ did not err in giving Dr. Warner's opinion "some

weight." Tr. 504.

## II.    Subjective Symptom Testimony

Plaintiff testified that she was unable to work during the closed adjudicatory period due

to depression, anxiety, anger, lack of focus and concentration and forgetfulness. Tr. 526-530. In

her decision, the ALJ discounted Plaintiff's symptom allegations due to inconsistency with her

treatment records, improvement and stability with treatment, disengagement with treatment, and

her ADLs. Tr. 499-503. Plaintiff argues that the ALJ failed to "meet the legal and evidentiary

standards to reject [Plaintiff]'s subjective testimony, which should be fully credited as true[,]"

and only takes issue with the ALJ's evaluation of the objective medical evidence and her

statement that Plaintiff did not require "emergency treatment" or "inpatient hospitalization"

during the relevant period. Pl. Br. at 21, citing Tr. 503. Plaintiff does not argue against the ALJ's

evaluation of her improvement and disengagement with treatment or her ADLs.

When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is

not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and

what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

SSR 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

### A. Medical Records

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ relied, in part, on Plaintiff's medical records to discount her symptom allegations. In her evaluation of the evidence, the ALJ found that the "medical findings do not support the existence of limitations greater than the limitations in the above residual functional capacity finding, which adequately accounts for the claimant's symptoms of anxiety, depression,

panic disorder, schizoaffective disorder, bipolar disorder, and neurocognitive disorder presenting

difficulty with interactive contact and memory impairment." *Id.* The ALJ concluded that

Plaintiff's allegations were "not entirely consistent with the medical evidence and her symptoms

are not severe enough to preclude all employment." *Id.* The ALJ discussed the objective medical

evidence and sufficiently supported her conclusion, because "[c]ontradiction with the medical

record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

      For example, the ALJ acknowledged Plaintiff's complaints of anxiety, depression, and

panic attacks, but found that her own reports to her providers demonstrated improved mood with

Zoloft, "good energy and motivation to do things" with no symptoms of hypomania or psychosis.

Tr. 500, citing. 477. The ALJ acknowledged another instance where Plaintiff denied "panic

attacks, depression, mania, suicidal ideations, flashbacks, nightmares, avoidance behaviors,

psychosis, and she rated her anxiety as a five on the 10 point scale." Tr. 502, citing Tr. 1083. The

ALJ pointed out that in November 2021, Plaintiff told her providers that "everything is going

well" and that she was looking for work. *Id.*, citing Tr. 1073. The ALJ then cited a treatment note

indicating Plaintiff "report[ed] improved moods, more stable moods, improved sleep, no

nightmares or hypervigilance[.] No side effects. 'I'm pretty good, my moods are level.' Denies

depression or neurovegetative signs of depression. No anger." *Id.*, citing Tr. 1065. The ALJ then

indicated that in February 2022, Plaintiff reported that "she was doing well such that she could

reduce the frequency of her appointments to once every three months." *Id.*, citing Tr. 2027.

Lastly, the ALJ cited another treatment note indicating that Plaintiff told her providers that she

was stable on medications, she got a job as a caregiver, and that she started school online for

mechanics. *Id.*

Plaintiff has not shown that this finding is unreasonable or unsupported by substantial evidence and has failed to show that the ALJ erred in discounting Plaintiff's allegations as inconsistent with the objective evidence. Though Plaintiff is correct that this reasoning could not alone support the ALJ's discounting of her testimony, this was not the sole reason cited by the ALJ and the ALJ did not err in considering the extent to which the objective evidence corroborated Plaintiff's testimony. *See* Pl. Br. at 21; *see also* Tr. 499-503. Moreover, the ALJ's other bases for discounting Plaintiff's testimony — disengagement with treatment in October 2019, improvement with treatment and her participation in robust daily activities — are all independently sufficient reasons for rejecting subjective symptom testimony. *See* Tr. 499, 501-03 (explaining that Plaintiff exhibited inconsistent daily activities and that her improvement and disengagement with treatment can be used to discredit subjective symptom testimony); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (explaining that lack of consistent treatment and failure to seek treatment or evaluation can be used to discredit symptom testimony). And, since Plaintiff has not challenged any of those bases for discrediting her testimony, any error in the ALJ's analysis of the objective medical record is harmless because it would be "inconsequential to the ultimate nondisability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (explaining that "errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination.'").

Despite Plaintiff's arguments to the contrary, the ALJ articulated clear and convincing reasons for discrediting her subjective symptom testimony. Accordingly, the ALJ's decision is AFFIRMED.

**ORDER**

The ALJ properly evaluated Plaintiff's subjective symptom testimony and the medical

opinion evidence from Drs. Porchia and Warner. For the reasons set forth above, the decision of

the Commissioner is AFFIRMED.

It is so ORDERED and DATED this _15_ day of October, 2025.

MARK D. CLARKE
United States Magistrate Judge